UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JESUS A. DeARCE REYES,

    Plaintiff,

v.                                                                          Case No. 8:23-cv-123-AEP

MARTIN O'MALLEY,
Acting Commissioner of Social Security,[1]

    Defendant.
_____/

## ORDER

Plaintiff seeks judicial review of a cessation of Social Security Disability Benefits (DIB). As the Administrative Law Judge's ("ALJ") decision was not based on substantial evidence and did not employ proper legal standards, the Commissioner's decision is reversed and remanded.

**I.**

**A.  Procedural Background**

Plaintiff filed an application for a period of disability on June 16, 2005, alleging disability beginning January 10, 2005. (Tr. 182-84). The Social Security Administration ("SSA") denied Plaintiff's claims both initially and upon reconsideration. (Tr. 66). Plaintiff then requested an administrative hearing *Id.* Per

---

[1] Martin O'Malley is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Acting Commissioner Martin O'Malley should be substituted for Commissioner Kilolo Kijakazi as the defendant in this matter. No further action needs to be taken to continue this matter by reason of the last sentence of section 205(g) of the Social Security Act.  42 U.S.C. § 405(g).

Plaintiff's request, the ALJ held a hearing at which Plaintiff appeared and testified *Id.* Following the hearing, the ALJ issued an unfavorable decision finding Plaintiff not disabled and accordingly denied Plaintiff's claims for benefits *Id.* Upon notice that Plaintiff's social security number was being fraudulently used, the ALJ reopened the case and issued a decision on April 16, 2009, finding Plaintiff disabled as of January 10, 2005. (Tr. 66-71). On December 1, 2014, following a review of Plaintiff's continued eligibility for DIB, the Commissioner found Plaintiff remained disabled. (Tr. 72). In 2019, the Commissioner again reviewed Plaintiff's eligibility for DIB and found that Plaintiff's disability ceased on April 25, 2019 (Tr. 73-81). Plaintiff appealed and a hearing before an ALJ was held on June 29, 2021. (Tr. 32). The ALJ subsequently issued on unfavorable decision on June 2, 2022. (Tr. 13-24). On November 14, 2022, the Appeals Counsel declined review. (Tr. 1-5). Plaintiff then timely filed a complaint with this Court. (Doc. 1). Accordingly, the case is now ripe for judicial review under 42 U.S.C. §§ 405(g), 1383(c)(3).

### B.   Factual Background and the ALJ's Decision

In rendering the first administrative decision finding Plaintiff disabled, the prior ALJ concluded that Plaintiff's Date Last Insured (DLI) was January 1, 2009, and that Plaintiff had not engaged in substantial gainful activity since January 10, 2005, the alleged disability onset date. (Tr. 68). After conducting a hearing and reviewing the evidence of record, the prior ALJ determined Plaintiff had one severe impairment – degenerative disc disease of the cervical spine. *Id.* Notwithstanding the noted impairment, the prior ALJ determined that Plaintiff did not have an

impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* The ALJ then concluded that Plaintiff retained a residual functional capacity ("RFC") to perform sedentary work, except that Plaintiff had "various, significant nonexertional limitation and cannot sustain/maintain an eight-hour workday, 40-hour workweek on a regular and continuing basis." *Id.* Considering Plaintiff's noted impairments limitations, the ALJ determined that Plaintiff could not perform his past relevant work. (Tr. 69). On April 16, 2009, the ALJ found that given Plaintiff's age, education, work experience, and RFC, Plaintiff was incapable of performing any jobs and accordingly concluded that Plaintiff had been under a disability since January 10, 2005. (Tr. 70-71).

On December 1, 2014, the SSA reviewed Plaintiff's disability status and found Plaintiff to still be disabled. (Tr. 83-85). Subsequently, the SSA revisited Plaintiff's disability status and concluded that Plaintiff was no longer disabled as of April 25, 2019. (Tr. 73-82). As the most recent favorable decision was the December 1, 2014 determination, that decision was considered the "comparison point decision" or CPD. (Tr. 15). After summarizing the findings from the CPD, the ALJ determined that Plaintiff had not engaged in substantial gainful activity through the date of the decision. *Id.* The ALJ then found that the medical evidence established that, since April 26, 2019, Plaintiff had the following medically determinable impairments: cervical spine degenerative disc disease, human immunodeficiency virus (HIV), hypertension, hepatitis C, lumbar spine degenerative disc disease,

insomnia, depression, anxiety, and psychosis. *Id.* Notwithstanding the noted impairments, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.*

According to the ALJ, medical improvement occurred on April 26, 2019, at which time the impairment present at the time of the CPD had decreased in medical severity to the point where Plaintiff retained the RFC "to perform light work as defined in 20 CFR 404.1567(b), except the claimant cannot climb ladders, ropes or scaffolds. He can occasionally stoop, kneel, crouch, and crawl. He can frequently climb ramps and stairs, and balance. The claimant must avoid concentrated exposure to loud noises." (Tr. 18). The ALJ did not consider the limiting effects of the impairments that Plaintiff developed after the CPD in setting forth the RFC but rather, based on the impairments present since the CPD, concluded that the RFC Plaintiff retained since April 26, 2019, was less restrictive than the RFC Plaintiff had at the time of the CPD. (Tr. 17). The ALJ noted that such medical improvement was related to the ability to work because it resulted in an increase in Plaintiff's RFC. *Id.*

The ALJ then found that since April 26, 2019, Plaintiff continued to have a severe impairment or combination of impairments, and based on the current impairments, Plaintiff retained the foregoing RFC. (Tr. 17-22). The ALJ indicated that Plaintiff had no past relevant work experience, was 42 years of age, had obtained at least a high school education, and transferability of skills was not an

issue given the lack of past relevant work experience. (Tr. 22). Based on Plaintiff's age, education, work experience, and RFC relating to his current impairments, the ALJ determined that Plaintiff maintained the ability to perform a significant number of jobs in the national economy, including work as a folder, garment bagger, and marker. (Tr. 22-23). Accordingly, the ALJ concluded that Plaintiff's disability ended on April 26, 2019, and Plaintiff had not become disabled again since that date. (Tr. 23).

## II.

To be entitled to benefits, a claimant must be disabled, meaning he or she must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities, which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Social Security Administration ("SSA"), to regularize the adjudicative process, promulgated the detailed regulations currently in effect.  These regulations establish a sequential evaluation process to determine whether a claimant is

disabled. 20 C.F.R. §§ 404.1520, 416.920.[2] The regulations also establish a sequential evaluation process to determine whether a claimant's disability continues or ends. 20 C.F.R. §§ 404.1594(f), 416.994(b)(5). Under this process, the SSA must determine, in sequence, the following:

> (1)  Whether the claimant is engaging in substantial gainful activity (SGA).[3] If the claimant is engaging in substantial gainful activity, the SSA will find disability to have ended;
>
> (2)  If the claimant is not engaging in SGA, whether the claimant has an impairment or combination of impairments which meets or equals the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. If the claimant does have such impairment, the claimant's disability will be found to continue;
>
> (3)  If the claimant does not have such impairment or combination of impairments, whether there has been medical improvement, as shown by a decrease in medical severity.[4]  If there has been medical improvement, the analysis proceeds to step four.  If there has been no decrease in medical severity, no medical improvement has occurred, and the analysis proceeds to step five;
>
> (4)  If the claimant experienced medical improvement, whether such medical improvement is related to the claimant's ability to perform work, *i.e.*, whether or not there has been an increase in the RFC based on the impairment(s) that was present at the time of the most recent favorable medical determination.  If medical improvement is not related to the claimant's ability to work, the analysis proceeds to step five, but, if medical improvement is related to the ability to work, the analysis proceeds to step six;
>
> (5)   If the SSA found at step three that no medical improvement occurred or if the SSA found at step four that medical improvement is

---

[2]  The cited references to the regulations pertain to those in effect at the time the decision was rendered.

[3]  SGA means work that (1) involves doing significant and productive physical or mental duties; and (2) is done (or intended) for pay or profit.  20 C.F.R. §§ 404.1510, 416.910.

[4]  Medical improvement means any decrease in the medical severity of the claimant's impairment(s) which was present at the time of the most recent favorable medical decision that the claimant was disabled or continued to be disabled.  20 C.F.R. § 404.1594(b)(1), 416.994(b)(1)(i).

not related to the claimant's ability to work, whether any of the exceptions in 20 C.F.R. § 404.1594(d) and (e) apply. If none apply, the disability will be found to continue. If one of the first group of exceptions to medical improvement applies, the analysis proceeds to step six. If an exception from the second group of exceptions to medical improvement applies, the claimant's disability will be found to have ended. The second group of exceptions to medical improvement may be considered at any point in the process;

(6) If medical improvement is shown to be related to the claimant's ability to do work or if one of the first group of exceptions to medical improvement applies, the SSA will determine whether all the claimant's current impairments in combination are severe. The SSA will consider all the claimant's current impairments and the impact of the combination of those impairments on the claimant's ability to function. If the RFC in step four shows significant limitation of the claimant's ability to perform basic work activities, the analysis proceeds to step seven. When the evidence shows that all of the claimant's current impairments in combination do not significantly limit his or her physical or mental abilities to perform basic work activities, the impairments will not be considered severe in nature, and, if so, the claimant will no longer be considered to be disabled;

(7) If a severe impairment exists, whether the claimant can perform SGA. At this step, the SSA assesses the RFC based on all of the claimant's current impairments and considers whether the claimant can still do work he or she performed in the past. If he or she can perform such work, disability will be found to have ended; and

(8) If unable to perform past relevant work, whether the claimant can perform other work given the RFC and the claimant's age, education, and past work experience.[5] If the claimant can perform other work, the SSA will find that disability has ended. If the claimant cannot

---

[5] An exception exists where the evidence in the claimant's file about his or her past relevant work is insufficient for the SSA to make a finding at step seven about whether the claimant can perform past relevant work. 20 C.F.R. §§ 404.1594(f)(9), 416.994(b)(5)(viii). If the SSA finds that the claimant can adjust to other work based solely on his or her age, education, and RFC, the SSA will find that the claimant is no longer disabled, and the SSA will not make a finding about whether the claimant can perform past relevant work. 20 C.F.R. §§ 404.1594(f)(9), 416.994(b)(5)(viii). If the SSA finds that the claimant may be unable to adjust to other work or that either 20 C.F.R. § 404.1562 or 20 C.F.R. § 416.962 may apply, the SSA will assess the claim under step seven under the DIB framework and step six under the SSI framework and make a finding about whether the claimant can perform past relevant work. 20 C.F.R. § 404.1594(f)(9); *see also* 20 C.F.R. § 404.1594(f)(9), 416.994(b)(5)(viii).

perform other work, the SSA will find that disability continues.

20 C.F.R. § 404.1594(f)(1)-(8); *see also* 20 C.F.R. § 416.994(b)(5)(i)-(viii) (outlining the substantially similar process for determining continuing disability for SSI, except for the first step regarding performance of SGA).

Essentially, "[a]n ALJ may terminate a claimant's benefits if there is substantial evidence that there has been medical improvement in the claimant's impairments related to his ability to work, and the claimant is now able to engage in substantial gainful activity." *Klaes v. Comm'r, Soc. Sec. Admin.*, 499 F. App'x 895, 896 (11th Cir. 2012) (*per curiam*) (citations omitted);[6] 42 U.S.C. § 423(f)(1); *see* 20 C.F.R. §§ 404.1594(a), 416.994(b).  As noted above, medical improvement means any decrease in the medical severity of the claimant's impairment(s) which was present at the time of the most recent favorable medical decision that the claimant was disabled or continued to be disabled. 20 C.F.R. §§ 404.1594(b)(1), 416.994(b)(1)(i).  The conclusion that a decrease in medical severity exists must be based upon improvements in a claimant's symptoms, signs, or laboratory findings associated with the claimant's impairment(s). 20 C.F.R. §§ 404.1594(b)(1), 416.994(b)(1)(i).  To determine medical improvement, therefore, a comparison of prior and current medical evidence must indicate that improvements occurred in the symptoms, signs, or laboratory findings associated with the claimant's impairment(s). 20 C.F.R. §§ 404.1594(c)(1), 416.994(b)(2)(i). Indeed, "a

---

[6] Unpublished opinions are not considered binding precedent but may be cited as persuasive authority.  11th Cir. R. 36-2.

comparison of the original medical evidence and the new medical evidence is necessary to make a finding of improvement." *Freeman v. Heckler*, 739 F.2d 565, 566 (11th Cir. 1984) (*per curiam*) (citing *Vaughn v. Heckler*, 727 F.2d 1040, 1043 (11th Cir. 1984)). Without such comparison, no adequate finding of medical improvement can occur. *Vaughn*, 727 F.2d at 1043. The failure to make such comparison requires reversal and remand for application of the proper legal standard. *Id.*; *see Klaes*, 499 F. App'x at 896 (citing *Vaughn* and noting that, if the ALJ fails to evaluate the prior medical evidence and make the comparison to the new medical evidence, courts must reverse and remand for application of the proper legal standard).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citation and internal quotation marks omitted). While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1260 (11th Cir. 2007) (citations omitted).

In reviewing the Commissioner's decision, the court may not reweigh the evidence or substitute its own judgment for that of the ALJ, even if it finds that the evidence preponderates against the ALJ's decision. *Winschel*, 631 F.3d at 1178

(citations omitted); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal. *Ingram*, 496 F.3d at 1260 (citation omitted). The scope of review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002) (*per curiam*) (citations omitted).

### III.

Plaintiff argues that the ALJ erred by: 1) affording great weight to the opinion of a non-medical source; 2) improperly evaluating the opinion of Dr. Gerrish; 3) failing to compare current medical evidence with the medical evidence from the Comparison Point Decision; and 4) failing to complete the record. As this court finds merit in Plaintiffs' third argument, it need not address the other arguments raised on appeal. *Freese v. Astrue*, No. 8:06-cv-1839, 2008 WL 1777722, at *3 (M.D. Fla April 18, 2008) (citing *Jackson v. Bowen*, 801 F.2d 1291, 1294 n.2 (11th Cir. 1991)).

Plaintiff argues that the ALJ errored in failing to compare the current medical evidence with the evidence from the Comparison Point Decision. At the Comparison Point Decision, records from four medical providers were used to determine disability. These include: (1) Michael S. Greenberg, PhD report received 11/04/14; (2) Mouna Bacha MD report received 10/06/14; (3) Anchor Medical

Group report received 09/25/14; and (4) Comprehensive Spine Institute report received 09/25/14. (Tr. 81). However, the ALJ neglected to exhibit the records from Comprehensive Spine Institute or otherwise included them in the record.[7] Moreover, the records exhibited as originating from "Mouna Bacha MD" are actually from Elias Kanaan, M.D. (Tr. 329-345) Thus, it is unclear to this Court whether the "Mouna Bacha MD" records reviewed by the ALJ were the same records as those used at the CPD. Notably, the records from "Mouna Bacha MD" exhibited by the ALJ relate only to Plaintiff's treatment for Hepatitis C, HIV, smoking dependency, and anxiety and do not discuss Plaintiff's degenerative disc disease. *Id.* Thus, the only record exhibited by the ALJ which discusses Plaintiff's degenerative disc disease at the CPD is a short summary from a state agency consultant, Dr. Molis, in 2014. (Tr. 385). In his report, Dr. Molis summarizes an appointment Plaintiff had in August 2014, noting that based off of the record Plaintiff presented with continued neck pain and radiation in his upper extremities, appeared chronically ill in distress, and had tenderness in his cervical spine. *Id.* Moreover, a cervical MRI revealed areas of stenosis and an anterior cervical disc fusion has been recommended. *Id.* Notably, other than the MRI record, none of originating medical records for this information were exhibited by the ALJ or

---

[7] Plaintiff also argues that records from Anchor Medical Group were not included within the record and thus not reviewed by the ALJ. However, four pages of medical records from Anchor Medical Group can be found at pages 329-332 of the transcript. Notably, these records concern only diagnoses and treatment for HIV, Hepatitis C, and anxiety with no findings or discussion regarding Plaintiff's cervical degenerative disc disease, the basis on which he was found to be disabled.

otherwise reflected in the record. In its Response, the Commissioner does not address the missing medical records from Comprehensive Spine Institute, or confusion concerning the records from Mouna Bacha MD. Instead, the Commissioner blanketly asserts that "[b]ecause the ALJ specifically compared the pre-CPD evidence with the post-CPD evidence, as required by 20 C.F.R. § 404.1594(b), substantial evidence supports his conclusion that Plaintiff's disability ceased." (Doc. 22 at 14). However, the record makes clear that the ALJ did not review all pertinent pre-CPD evidence. In fact, the only record exhibited discussing Plaintiff's cervical degenerative disc diseases is the five-line summary given in Dr. Molis' report. Thus, remand on this basis alone is appropriate.

An ALJ is required to "develop a full and fair record." *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003). However, a court will remand a case to develop the record only where a claimant can show that the ALJ did not have or consider all the relevant evidence. *Townsend v. Comm'r of Soc. Sec*. 555 F. App'x 888, 891 (11th Cir. 2014). In making this determination, the Court is guided by whether the record reveals evidentiary gaps which result in unfairness or 'clear prejudice.'" *Graham v. Apfel*, 129 F.3d 1420, 1423 (11th Cir. 1997). Here, there is a clear evidentiary gap regarding the status of Plaintiff's degenerative disc disease at the time of the CPD mandating remand. *See Klaes v. Comm'r, Soc. Sec. Admin.*, 499 F. App'x 895 (11th Cir. 2012) (finding that the failure to compare medical records relied upon to make original disability determination with current medical records was reversible error); *Calbetzor v. Comm'r of Soc. Sec.*, No. 5:19-CV-137-OC-PRL, 2020 WL 13596545

(M.D. Fla. Feb. 19, 2020) (reversing where the record did not contain any medical evidence related to the comparison point decision).

Moreover, even if the ALJ had exhibited and reviewed all of the pertinent CPD records, the ALJ failed to actually compare them to the present evidence. Within his decision, the ALJ makes a two-sentence reference to Plaintiff's condition at the time of the CPD noting that:

> [a]t the time of the CPD, the claimant had continued neck pain that radiated into his upper extremities, he appeared chronically ill, he had tenderness in his cervical spine, and his MRI scan showed severe areas of stenosis (Exhibit 8F). On December 1, 2014, Edmund Molis, M.D. determined that the claimant had no medical improvement.

(Tr. 17). As indicated by the ALJ's citation to "Exhibit 8F," this is merely a regurgitation of the Dr. Mollis' summary. At no point in his opinion does the ALJ directly cite to or otherwise discuss any CPD evidence. (Tr. 15-24). Instead, the ALJ focused his analysis solely on Plaintiff's post CPD evidence to conclude that Plaintiff's disability ended April 26, 2019. *Id.* For example, the ALJ notes that Plaintiff's 2018 MRI showcased "mild to moderate disc bulges at C3-4 and C5-6, mild diffuse disc bulges at C4-5 and C6-7, and foraminal stenosis was most apparent at the C5-6 level on both sides" but does not reference or otherwise compare these findings to Plaintiff's 2014 imaging. (Tr. 17). Similarly, though the ALJ cites to seeming "improvements" made by Plaintiff such as that he "reported no weakness and no arthralgias and he exhibited normal strength, normal gait, and normal extremities" on July 18, 2019, and "had no neck pain, no dizziness, normal strength, and normal gait" in August 2019, the ALJ fails to compare and relate these

13

findings to Plaintiff's status at the CPD to demonstrate an "improvement." *Id.* Instead, the ALJ focused his analysis on Plaintiff's current condition, noting a gap in Plaintiff's treatment from August 2018 through August 2019 and a finding of no cervical radiculopathy in Plaintiff's January 9, 2018 electromyography and nerve conduction study. *Id.*

Under binding Eleventh Circuit precedent, "comparison of the original medical evidence and the new medical evidence is **necessary** to make a finding of improvement." *Freeman v. Heckler*, 739 F.2d 565, 566 (11th Cir. 1984) (emphasis added). Put simply, "[w]ithout a comparison of the old and new evidence, there can be no adequate finding of improvement." *Gombash v. Comm'r, Soc. Sec. Admin.*, 566 Fed.Appx. 857, 859 (11th Cir. 2014); *see also McAulay v. Heckler*, 749 F.2d 1500 (11th Cir. 1985) (finding that "the ALJ failed to properly address the issue of improvement" because "[w]hile the original medical records are referred to by the ALJ, no comparison was made in this case"). The failure to make this comparison necessitates reversal and remand. *Vaughn v. Heckler*, 727 F.2d 1040, 1043 (11th Cir. 1984).

Here, the Commissioner cites to the ALJ's two sentence evaluation of Plaintiff's prior CPD evidence in arguing that this case is distinguishable from *Freeman*. (Doc. 22 at 13). However, courts throughout this district have consistently held that cursory reviews and references to prior medical evidence in an ALJ's decision without an actual comparison of the old and new evidence fail to meet this standard. *See Lewis v. Saul*, No. 8:19-CV-1742-T-TGW, 2020 WL 2989389 (M.D.

Fla. June 3, 2020) (finding that a "brief summary of information from the comparison point decision is not sufficiently detailed to permit the rigorous comparison of the old and new evidence that is required by the Eleventh Circuit"); *Maldonado v. Comm'r of Soc. Sec., No. 8:20-CV-202-JSS*, 2021 WL 8939489, at *5 (M.D. Fla. Sept. 10, 2021) (remanding where the ALJ merely made "passing references to some pre-CPD medical records, such as Plaintiff's MRIs and CT scans" but did "not substantively compare the evidence to demonstrate a change or medical improvement in Plaintiff's symptoms, signs, or laboratory findings") *Angelo v. Comm'r of Soc. Sec.*, No. 2:20-CV-38-MRM, 2021 WL 3047118, at *9 (M.D. Fla. July 20, 2021) ("As a final matter, to the extent the ALJ may have cited to and relied on records that determined that a medical improvement occurred, this does not satisfy the ALJ's obligation to compare Plaintiff's prior medical records with his new medical records."); *Soto v. Comm'r of Soc. Sec.*, No. 5:19-CV-568-OC-MAP, 2020 WL 4048210 (M.D. Fla. July 20, 2020) ("[T]he ALJ's mere reference to the CPD in setting forth her findings does not equate to a comparison of the original medical evidence and the new medical evidence required to make a finding of medical improvement."); *Olivo v. Colvin*, No. 616CV259ORL40JRK, 2017 WL 708743 (M.D. Fla. Jan. 30, 2017), *report and recommendation adopted sub nom. Olivo v. Comm'r of Soc. Sec.,* No. 616CV259ORL40JRK, 2017 WL 700367 (M.D. Fla. Feb. 22, 2017) (same); *Jasper v. Colvin*, No. 8:16-CV-727-T-23AEP, 2017 WL 655528 (M.D. Fla. Jan. 31, 2017), *report and recommendation adopted sub nom. Jasper v. Comm'r of Soc. Sec.*, No. 8:16-CV-727-T-23AEP, 2017 WL 638389 (M.D. Fla. Feb. 16, 2017) (same).

For the foregoing reasons, the ALJ errored in determining a medical improvement had occurred the case is reversed and remanded for application of the correct legal standard.

## IV.

Accordingly, after consideration, it is hereby

ORDERED:

1. The decision of the Commissioner is REVERSED, and the matter is REMANDED to the Commissioner for further administrative proceedings.

2. The Commissioner is directed to apply the proper legal standard in determining whether Plaintiff experienced medical improvement and review the other issues raised by Plaintiff on appeal.

2. The Clerk is directed to enter final judgment in favor of Plaintiff and close the case.

DONE AND ORDERED in Tampa, Florida, on this 5th day of March 2024.

_____
ANTHONY E. PORCELLI
United States Magistrate Judge

cc: Counsel of Record